UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| G.L.F., a minor child, by his duly appointed and serving next friend and father, David Felter, and DAVID FELTER and BEVERLY FELTER, <br><br>Plaintiffs, <br><br>v. <br><br>WILLIAM B. HEIMAN, d/b/a H&H AMUSEMENTS, and CHRIS YEARIAN, <br><br>Defendants. | Case No. 1:04CV00072LMB |

**MEMORANDUM AND ORDER**

This matter is before the court on the Petition originally filed in the Circuit Court of Scott Couty, Missouri, of the minor plaintiff G.L.F, by his next friend and father David Felter, and Beverly Felter, his mother, alleging negligence by defendants William B. Heiman, d/b/a H & H Amusements, and Chris Yearian. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c). Presently pending before the court is defendants' Motion for Summary Judgment, along with a Memorandum of Law in Support, and Statement of Uncontroverted Facts. (Documents Number 21, 22, 23). Plaintiffs have filed a Response (Doc. No. 30), and defendants have filed a Reply (Doc. No. 32).

**Background**

In their Petition, plaintiffs allege two different theories for recovery against defendants for

injuries sustained by Plaintiff G.L.F. on August 31, 2002, when G.L.F. rode the "Swinger" ride at the annual "Neighbor Day" picnic in Benton, Missouri. In Count I, plaintiffs state a negligent supervision claim. Plaintiffs claim that defendants negligently and carelessly operated, controlled, and maintained the Swinger ride, which caused G.L.F.'s seat belt to become so loose that G.L.F. was thrown from his seat to the ground, causing G.L.F. to sustain severe and permanent injuries. In Count II, plaintiffs state a general negligence claim under a res ipsa loquitur theory. Plaintiffs claim that defendants had exclusive control and management of the Swinger ride, and that an accident of this type does not occur in the ordinary course of business if those in control exercise the appropriate degree of care. Plaintiffs allege that defendants did not exercise ordinary care, and that such failure was the proximate cause of G.L.F.'s injuries. Plaintiffs David and Beverly Felter, the parents of Plaintiff G.L.F., also state a claim against defendants based on the theories set forth in Counts I and II for medical bills incurred as a result of G.L.F.'s injuries.

## Discussion

### A. Summary Judgment Standard

A court may grant summary judgment when no issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. at 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the nonmovant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 249, 106 S. Ct. at 2510-2511. The nonmovant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Id. at 327 (quoting Fed. R. Civ. P. 1).

**B.     Background Facts[1]**

Defendants are owners of a business, which operates traveling amusement park rides, including a "Swinger" ride. The Swinger ride consists of bucket style seats, which are hung from chains. The ride swings the chairs around in a circle and at an angle. Defendants operated carnival rides, including the Swinger, at the Neighbor Day picnic in Benton, Missouri on August 31, 2002. Plaintiff G.L.F. had been on the Swinger ride prior to the day of the accident. Maintenance on the carnival rides was performed by William Heiman and his son, Michael Heiman.

---

[1]The court's recitation of the facts is taken from defendants' Statement of Uncontroverted Facts and plaintiffs' Response to defendants' Statement of Uncontroverted Facts. The court has noted any disputes as they are set forth in the briefs.

Before operating the Swinger ride each day, defendants checked the seat belts for damage.[2] On August 31, 2002, the Swinger ride was inspected by Michael Heiman for the following: safety belts, bars, locks, and other passenger restraints; all automatic and manual safety devices; signal systems, brakes, and control devices; safety pins and keys; fencing, guards, barricades, stairways, and ramps; ride structure and moving parts; tightness of bolts and nuts; blocking, support braces, and jackstands; electrical equipment; lubrication, as per manufacturer's instructions; and hydraulic and/or pneumatic equipment.[3] In addition, prior to opening, defendants operated the ride through one complete cycle of proper functioning.[4] The Swinger ride has all necessary permits and proper paperwork, and had been approved for operation in the state of Missouri by the State Fire Marshal.

On August 31, 2002, Plaintiff G.L.F. attended the Neighbor Day parade with his mother, Beverly Felter, in Benton, Missouri. After the parade ended at approximately 10:30 a.m., Beverly Felter took her other children home to change clothes. While Ms. Felter went home, G.L.F. was left in the care of Ms. Jennifer Gadberry and her son. After Ms. Felter departed, G.L.F. purchased tickets to ride the carnival rides and rode a couple rides with Ms. Gadberry's son. G.L.F. and Ms. Gadberry's son decided to ride the Swinger ride. G.L.F. stood in line behind a

---

[2]Plaintiffs deny this fact by stating that this information is within the exclusive control of defendants and plaintiffs are unable to obtain facts to negate this information. See Doc. No. 30 at 3, ¶ 6.

[3]Plaintiffs deny this fact by stating that this information is within the exclusive control of defendants and plaintiffs are unable to obtain facts to negate this information. See Doc. No. 30 at 3, ¶ 6.

[4]Plaintiffs deny this fact by stating that this information is within the exclusive control of defendants and plaintiffs are unable to obtain facts to negate this information. See Doc. No. 30 at 3, ¶ 7.

gate and then presented his ticket to the operator, Defendant Chris Yearian, who granted him entrance to the ride. G.L.F. sat down in the last seat without assistance and fastened his seat belt.[5] G.L.F. did not inform the operator of any problem with the seat belt. The operator looks at each passenger to see if his or her seat belt is fastened.[6] The operator told the passengers on the ride, including G.L.F, to keep their arms and legs inside, to hold onto the chains, and to refrain from sticking out their arms.[7] The ride started its operation and G.L.F completed five or six revolutions before he came out of his seat and was injured.

A physical investigation of the ride was conducted on August 31, 2002, by Missouri State Fire Marshal deputy James "Butch" Amann. The physical inspection of the Swinger ride revealed that there was no failure of any suspension arms, chains, or seats.[8] Butch Amann and Benton Police Chief Roy Moore inspected all the seat belts on the Swinger ride, and found them to be in

---

[5]Defendants claim that G.L.F. noted nothing unusual about the seat in which he sat and properly fastened the seat belt. See Doc. No. 23 at p. 4, ¶¶ 16, 17. Plaintiffs, however, claim that G.L.F. had problems fastening his seat belt and noted that the latch was stuck and was difficult to push down and lock into place. See Doc. No. 30, p. 3-4, ¶¶ 16, 17. Plaintiffs further state that G.L.F. did not believe that the belt was "hooked good" because the belt was somewhat loose and did not fit tightly against his body. See id.

[6]Plaintiffs deny this fact by stating that the ride operator, Defendant Yearian, never physically checked G.L.F.'s seat belt and only may have looked at it to see if it was fastened. See Doc. No. 30 at p. 4, ¶ 19.

[7]Plaintiffs deny that Defendant Yearian told G.L.F. to keep his legs inside the ride. See Doc. No. 30, p. 4 at ¶ 20.

[8]Plaintiffs admit that there was no failure of any suspension arm or chain on the ride, but deny that there was no failure of the seat by noting that Butch Amann and Roy Moore found that some of the seat belts on the ride did not work like they were supposed to unless they were "clamped down pretty good." Doc. No. 30, p. 6 at ¶ 28.

working condition with no evidence of any seat belt being broken or damaged.[9]  Butch Amann concluded that there was no evidence of any mechanical problem which might have caused the accident.[10]  Butch Amann and Roy Moore found that some of the seat belts on the ride did not work the way they were supposed to unless they were clamped down very tightly.  The Swinger ride was also inspected by the state of Illinois' Department of Labor-Carnival Ride Division and Consumer Products Safety Board after the accident, which revealed that there was no mechanical failure with the seat belt or the Swinger ride.[11]

## C. Defendants' Motion for Summary Judgment

In support of their Motion for Summary Judgment, defendants first argue that plaintiffs are unable to prove an essential element of their negligent supervision claim.  Specifically, defendants contend that plaintiffs are unable to show a direct causal nexus between the alleged negligent supervision of G.L.F.'s seat belt on the Swinger ride and G.L.F.'s injuries.  With regard to plaintiffs' general negligence claim, defendants allege that G.L.F. maintained complete and exclusive control over his seat and seat belt at the time of the accident.  Defendants thus contend

---

[9]Plaintiffs deny these facts by stating that, upon inspecting the seat belts immediately after the accident, Butch Amann and Roy Moore found that some of the seat belts on the ride did not work like they were supposed to unless they were "clamped down pretty good."  Doc. No. 30, p. 6 at ¶ 29.

[10]Plaintiffs deny these facts by stating that, upon inspecting the seat belts immediately after the accident, Butch Amann and Roy Moore found that some of the seat belts on the ride did not work like they were supposed to unless they were "clamped down pretty good."  Doc. No. 30, p. 6 at ¶ 30.

[11]Plaintiff denies this fact by again noting that, upon inspecting the seat belts immediately after the accident, Butch Amann and Roy Moore found that some of the seat belts on the ride did not work like they were supposed to unless they were "clamped down pretty good."  Doc. No. 30, p. 6 at ¶ 31.

that the court should not allow a jury to presume the negligence of defendants.

In their Response, plaintiffs claim that they have presented sufficient evidence that the negligent supervision of Plaintiff G.L.F. on the Swinger ride was the direct and proximate cause of G.L.F.'s injuries. Plaintiffs state that G.L.F.'s seat belt was not working properly and was loose, and that Defendant Yearian did not take any steps to ensure that G.L.F's seat belt was properly secured. Plaintiffs further state that the loose seat belt, which Defendant Yearian failed to physically check, came loose during the operation of the Swinger ride, causing G.L.F. to fly out of his seat and strike a metal fence, thereby seriously injuring him. With regard to their general negligence claim, plaintiffs argue that the facts set forth by plaintiffs show that the instrumentality involved in injuring G.L.F. was under the control of defendants, as GL.F. had no means to start or stop the ride but was under the exclusive control of Defendant Yearian once the ride began to move.

In their Reply, defendants argue that plaintiffs have failed to establish a duty by defendants under a theory of negligent supervision and have failed to establish the standard of care applicable to defendants. With regard to plaintiffs' general negligence or res ipsa loquitur claim, defendants contend that plaintiffs have failed to present evidence that defendants maintained exclusive control of the seat belt. Finally, defendants argue that plaintiffs' use of its rebuttal expert in its Response to Defendants' Motion for Summary Judgment is improper and should be stricken.

**1. Plaintiffs' Negligent Supervision Claim**

Defendants claim that they are entitled to summary judgment on plaintiffs' negligent supervision clam because plaintiffs have presented no evidence that defendants' negligent

supervision was the cause of Plaintiff G.L.F.'s injuries. In their Reply, defendants claim that plaintiffs have failed to establish a duty owed by defendants under a theory of negligent supervision and that plaintiffs have failed to establish the standard of care under such a theory.

To make a prima facie case of negligent supervision, a plaintiff must prove: (1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm; (2) a breach of that duty; (3) a proximate cause between the breach and the resulting injury; and (4) actual damages to the plaintiff's person or property. See Cook v. Smith, 33 S.W.3d 548, 553 (Mo. Ct. App. 2001); Smith by Smith v. Archbishop of St. Louis, 632 S.W.2d 516, 521 (Mo. Ct. App. 1982). To recover, a plaintiff "need not show that the very injury resulting from defendant's negligence was foreseeable, but merely that a reasonable person could have foreseen that injuries of the type suffered would be likely to occur under the circumstances." Smith, 632 S.W.2d at 521.

### A. Causation

Defendants first argue that plaintiffs have failed to present evidence showing that defendants' negligent supervision was the cause of Plaintiff G.L.F.'s injuries. In order to prove the causal connection necessary to establish negligence, plaintiffs must show both causation in fact and proximate cause. See Robinson v. Missouri State Highway and Transp. Com'n, 24 S.W.3d 67, 77 (Mo. Ct. App. 2000). The trier of fact normally decides causation. See id. "A defendant's conduct is the cause in fact of a plaintiff's injuries where the injuries would not have occurred but for that conduct." See id. (quoting Guffey v. Intergrated Health Servs., 1 S.W.3d 509, 517 (Mo. Ct. App.1999)). "Proximate cause is not causation in fact, but is a limitation the law imposes upon the right to recover for the consequences of a negligent act."

Robinson, 24 S.W.3d at 77 (quoting Simonian v. Gevers Heating & Air Conditioning, Inc., 957 S.W.2d 472, 475 (Mo. Ct. App. 1997). Proximate cause is determined by looking back, after the occurrence, and examining whether the injury appears to be a reasonable and probable consequence of the conduct. See id. at 78.

Defendants argue that there is no evidence to suggest that G.L.F.'s seat belt failed or was in any way connected to the accident. Defendants state that G.L.F. testified that he never noticed any problems with the seat belt and had no idea why he flew out of his chair. Defendants further state that there is no evidence of a mechanical failure to suggest that the seat belt was the cause in fact of G.L.F.'s injuries. Defendants argue that plaintiffs' negligent supervision claim cannot proceed because plaintiffs cannot prove causation.

Plaintiffs argue that they have presented evidence that G.L.F.'s seat belt failed or came loose, causing him to sustain serious injures. Plaintiffs further argue that Defendant Yearian's negligent supervision of G.L.F in failing to assure that G.L.F.'s seat belt was securely fastened was the direct and proximate cause of the failure of the seat belt.

Plaintiffs have produced sufficient evidence to raise a genuine factual issue regarding the cause of G.L.F.'s injuries. G.L.F. testified that he experienced difficulty fastening his seat belt. See Deposition of G.L.F., Def's Ex. E, at 18. G.L.F. stated that the latch "kind of stuck and it was kind of hard to push down." Id. G.L.F. testified that he did not believe the seat belt was "hooked good" because the belt was "kind of loose," and did not fit tightly against his body. Id. at 20-21. G.L.F. further testified that the ride operator, Defendant Yearian, only walked around and may have looked at his seat belt, but did not physically check the seat belt to determine whether it was securely fastened. See id. at 23. He stated that during the ride, his seat rocked

back and forth from side to side. See id. at 29-30. G.L.F. testified that after about five rotations into the ride, he was thrown from his seat when the seat belt came loose, causing him to strike the metal retaining fence around the ride and sustain injuries. See id. at 28, 31. In addition, plaintiffs have attached a report of an expert, Dr. Ragu Athinarayanan, who expresses the opinion that G.L.F.'s accident was caused by the failure of his seat belt. See Doc. No. 30, Ex. 1.

The question of whether G.L.F.'s seat belt failed, and whether defendant's failure to ensure G.L.F.'s seat belt was securely fastened caused G.L.F. to fly out of his seat are crucial disputed factual issues in this case. Viewed in the light most favorable to plaintiffs, plaintiffs have raised issues which would allow for a finding that G.L.F.'s injuries were caused by defendants failure to ensure that G.L.F.'s seat belt was securely fastened. For this reason, entry of summary judgment in favor of defendants is improper.

**B.    Duty**

Although defendants stated in their Memorandum of Law in Support of their Motion for Summary Judgment that, for purposes of their Motion for Summary Judgment, they did not dispute they owed a duty to G.L.F., defendants argue in their Reply that they do not owe a duty to G.L.F. Missouri courts have held that the duty to supervise is narrow, requiring, "the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care." Cook, 33 S.W.3d at 553 (quoting Hill ex rel Hill v. Herbert Hoover Boys Club, 990 S.W.2d 19, 22 (Mo. Ct. App. 1999)). The "acceptance of the custody and control of a minor child creates a relationship sufficient to support a duty of care." Hill, 990 S.W.2d at 22. "It is not the supervisor's control over the instrumentality that caused the harm, but the obligation and ability to supervise and control *the child* that is the decisive factor in a negligent supervision of a

minor case." Id. (emphasis in original).

Defendants rely on Hill as support for their position that they owed no duty to G.L.F. In Hill, the defendant was a boys club that hosted a baseball game with another boys club. Plaintiff, a member of the visiting team, brought suit against the hosting team under a theory of negligent supervision when he was injured on the field during the game. Plaintiff claimed that the defendant was negligent in permitting the baseball game to take place on a substandard field. The Missouri Court of Appeals for the Eastern District held that defendant did not have a relationship with the plaintiff sufficient to support a duty to supervise when personnel from the boys club to which the plaintiff belonged were present during the time of the incident. See Hill, 990 S.W.2d at 23.

The Missouri Court of Appeals for the Eastern District distinguished Hill in Cook. In Cook, the defendants were parents who hosted a party and bonfire at their farm for twenty-five to thirty members of their daughter's high school volleyball team. When the parents were not present, a guest was injured after driving the defendants' ATV with faulty breaks. The Court held that the defendants accepted the custody and control of the plaintiff, creating a duty to her of ordinary care. See Cook, 33 S.W.3d at 554. The Court distinguished the case from Hill by stating that this plaintiff was an invited, anticipated guest, and that the defendants were "more akin to the coaches on Hill's team than to those on the opposing team." Id.

In the instant case, G.L.F. purchased a ticket to ride the Swinger and presented the ticket to the ride operator, Defendant Yearian, who granted G.L.F. admittance to the ride. As such, G.L.F., can more accurately be compared to the plaintiff in Cook, who was found to be an "invited anticipated guest," to which the defendants owed a duty of ordinary care. Cook, 33 S.W.3d at 554. As such, the undersigned finds that plaintiffs have set forth sufficient evidence to

establish the existence of a duty owed by defendants to G.L.F.

### C. Standard of Care

Defendants also argue that, even if the court finds a duty on the part of defendants, defendants are still entitled to summary judgment on plaintiffs' negligent supervision claim because plaintiffs have presented no expert evidence regarding the relevant standard of care for defendants. Defendants rely on Annen v. Trump, 913 S.W.2d 16 (Mo. Ct. App. 1995) to support their position. In Annen, the plaintiff alleged that an engineer negligently supervised the installation of a roof. The plaintiff did not present expert testimony at trial and claimed that no expert testimony was needed because negligent supervision comes within the common knowledge exception to the requirement of expert testimony. The Missouri Court of Appeals for the Western District held that the "supervisory duties of the engineer, the extent of those duties and whether there was compliance with the specifications and plans were outside of the common knowledge and experience of laymen." Id. at 22.

The undersigned finds that defendants' argument lacks merit. The instant case, unlike the facts of Annen, does not involve a professional standard of care. Rather, plaintiffs merely allege that Defendant Yearian was negligent in failing to determine whether G.L.F.'s seat belt was securely fastened. This case does not involve matters outside of the common knowledge and experience of laymen, but only involves a duty of ordinary care. As such, plaintiffs were not required to present expert testimony on the standard of care. Accordingly, defendants are not entitled to summary judgment on plaintiffs' negligent supervision claim.

## 2. Plaintiffs' General Negligence/ Res Ipsa Loquitur Claim

Defendants argue that they are entitled to summary judgment on plaintiffs' res ipsa loquitur claim because G.L.F. maintained control of his seat and seat belt at the time of the accident, and because G.L.F. possessed superior knowledge as to the cause of the accident. Res ipsa loquitur is a rule of evidence, which allows a jury to infer negligence when three elements combine: (1) the incident normally does not occur without negligence; (2) the incident was caused by an instrumentality under the control of the defendant; and (3) the defendant has superior knowledge about the cause of the incident. See Weber v. McBride & Son Contracting Co., 182 S.W.3d 643, 645 (Mo. Ct. App. 2005); Weaks v. Rupp, 966 S.W.2d 387, 393-94 (Mo. Ct. App. 1998). The doctrine of res ipsa loquitur exists to obviate the need for direct proof of negligence, and allows cases submitted under the doctrine to proceed to the jury even in the absence of direct proof of negligence. Zumwalt v. Koreckij, 24 S.W.3d 166, 168 (Mo. Ct. App. 2000).

Defendants claim that plaintiffs have presented no evidence indicating that a mechanical failure caused the accident, and have presented no evidence of unusual movements during the operation of the ride. Defendants argue that plaintiffs are unable to prove the second element of their claim because G.L.F. was in exclusive control of his Swinger seat and seat belt at the time of the accident. Defendants have attached as an exhibit the report of an expert, Dr. David Probst, who expresses the opinion that the only possible explanation for the accident was that G.L.F. attempted to get out of his seat. See Report of Dr. David Probst, Def's Ex. C.

Plaintiffs argue that they have presented sufficient evidence to show that Defendant Yearian was in exclusive control of the Swinger ride when G.L.F. was thrown from the ride and

that the failure of the seat belt and the rotation of the seat on the ride caused G.L.F.'s injuries. Plaintiffs again point to G.L.F.'s deposition testimony, in which he stated that he experienced difficulty fastening his seat belt and that he did not believe the belt was "hooked good" because it did not fit tightly against his body. See Deposition of G.L.F., Def's Ex. E at 18, 20-21. Plaintiffs note that G.L.F. also testified that his seat on the Swinger ride was rotating left to right during the ride as the ride picked up speed, and that G.L.F. was thrown out of his seat when his seat belt came loose, thereby sustaining serious injuries. See id. at 28-31. Plaintiffs further argue that the expert report of Dr. Ragu Athinarayanan fully supports the testimony of G.L.F. that the motion of the seat during the ride combined with the loose seat belt directly contributed to G.L.F. being thrown from his seat during the ride. See Report of Dr. Ragu Athinarayanan, Pl's Ex. 1.

The undersigned finds that plaintiffs have established the elements of res ipsa loquitur. Defendant Yearian was operating the Swinger ride when Plaintiff G.L.F. was a passenger on the ride, and G.L.F. did not have the ability to stop the Swinger ride when he was being thrown from his seat. Plaintiffs argue that the failure of G.L.F.'s seat belt combined with the rotation of the seat caused G.L.F. to fly out of his seat. The opinion of Dr. Athinarayanan supports plaintiffs' theory. When a plaintiff establishes the elements of res ipsa loquitur, an inference of negligence by the defendant is created. See Zumwalt, 24 S.W.3d at 168. "Once the inference of negligence created by res ipsa loquitur is established, it 'will defeat a motion for summary judgment even though the defendant presents evidence tending to establish absence of negligence.'" Id. at 169 (quoting Schaffner v. Comberland County Hosp. System, Inc., 336 S.E.2d 116, 118 (N.C. App. 1985)). Having found that plaintiffs have established the elements of res ipsa loquitur, defendants' Motion for Summary Judgment will be denied.

Finally, defendants contend that plaintiffs cannot use the report of Dr. Athinarayanan in response to defendants' Motion for Summary Judgment to support their claims because they have designated him as a rebuttal expert. Defendants request that the court strike plaintiffs' use of Dr. Athinarayanan for purposes of defendants' Motion for Summary Judgment. The court finds that plaintiffs' use of Dr. Athinarayanan's report in their Response to defendants' Motion for Summary Judgment was proper and will deny defendants' request to strike this evidence.

## **ORDER**

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 21) be and it is **denied**.

Dated this __23rd__ day of March, 2006.

                                                      */s/ Lewis M. Blanton*
                                                      LEWIS M. BLANTON
                                                      UNITED STATES MAGISTRATE JUDGE